UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| DUSTIN E. MCGUIRE,<br><br>    Plaintiff,<br><br>    v.<br><br>JULIE KOLODZIEJ, as Administrator of<br>the Estate of DR. JOSEPH M.<br>THOMPSON, et al.,<br><br>    Defendants. | CAUSE NO.: 3:18-CV-760-JD-MGG |

OPINION AND ORDER

Dustin E. McGuire, a prisoner without a lawyer, filed a motion for leave to amend along with a proposed second amended complaint.[1] ECF 72. He also filed a motion for a preliminary injunction. ECF 73. "Leave to amend is to be 'freely given when justice so requires.'" *Liu v. T&H Machine*, 191 F.3d 790, 794 (7th Cir. 1999) (quoting *Payne v. Churchich*, 161 F.3d 1030, 1036 (7th Cir. 1998) and Fed. P. Civ. P. 15(a)). A filing by an unrepresented party "is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Nevertheless, pursuant to 28 U.S.C. § 1915A, the court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious,

---

[1] McGuire previously filed a motion to amend (ECF 63) with a different proposed amended complaint, but that motion will be denied as moot due to the later filed motion.

fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

McGuire was originally granted leave to proceed against Dr. Joseph Thompson in his individual capacity for monetary damages for delaying the receipt of proper medical treatment for his wrist after he fell on October 1, 2016, in violation of the Eighth Amendment. *See* ECF 5. Because Dr. Thompson passed away on May 5, 2019, Julie Kolodziej, as the administrator of his estate, was substituted as the plaintiff in this action. *See* ECF 46. The court subsequently allowed McGuire to amend his complaint in order to bring an additional damages claim against Dr. Nancy Marthakis for failing to provide him with pain medication and/or adequate medical treatment for his wrist beginning in late September of 2018. *See* ECF 48.

In his motion to amend, McGuire indicates he wishes to add Corizon and Wexford as additional defendants, and he states that "[e]vents have occurred since plaintiff filed his complaint which are similar in nature to the violations alleged in the complaint filed on September 14, 2018." ECF 72 at 1. The attached proposed second amended complaint names Julie Kolodziej, as the administrator of the estate of Dr. Joseph Thompson, Dr. Nancy Marthakis, Corizon, and Wexford as defendants. Many of the facts are largely identical to those set forth in the original and amended complaints, and any relevant differences will be added below. The current defendants have filed a response in opposition to McGuire's motion, arguing that the amendment would be futile, that he unduly delayed bring his new claims, and that he has repeatedly failed to cure deficiencies. *See generally* ECF 74.

*Allegations in the Proposed Second Amended Complaint*

McGuire is an inmate at the Indiana State Prison. On October 1, 2016, he was injured by falling down the stairs. As a result, he was seen by Nurse Collins for his injuries, which included a swollen left wrist. Nurse Collins informed Dr. Thompson of McGuire's injuries; however, he did not come out of his office to personally observe them. The next day, Nurse Collins again examined McGuire and noted that McGuire's left wrist was hurting and swollen with a bump on the top and a bruise on the palm. She informed Dr. Thompson of these injuries, but he again did not come out of his office to personally examine them. He did, however, prescribe Tylenol #3 for the pain.

On October 3rd, McGuire's wrist was x-rayed. The x-ray technician told McGuire that the results would likely look "normal" due to the swelling. The technician told Dr. Thompson that the wrist needed to be x-rayed after the swelling went down. However, Dr. Thompson waited nearly eight months to order an x-ray for McGuire's wrist. The x-ray revealed McGuire's wrist was broken. Dr. Thompson then ordered a second x-ray, which again showed that McGuire had a broken wrist. Dr. Thompson scheduled him to see an orthopedic surgeon on June 29, 2017, who applied a cast to McGuire's left wrist. After the cast was removed, the orthopedic specialist recommended surgery.

On September 14, 2017, McGuire was seen by hand surgeon, Randolph J. Ferlic. He told McGuire that surgery was required because Dr. Thompson waited too long to put his wrist in a cast. McGuire had wrist surgery on January 8, 2018. During a post-

3

surgery follow-up visit on March 13, 2018, Dr. Ferlic informed McGuire that he would need ongoing physical therapy for his wrist. He also noted that if he was still having pain or discoloration by October, his wrist would need to be evaluated. He was never given physical therapy.

In September of 2018, McGuire's wrist turned purple and began causing him an extreme amount of pain. Later that month, he saw Dr. Nancy Marthakis and informed her of the pain. She ordered an x-ray. The x-ray, which was performed on September 28, 2018, showed "internal fixation of the scaphoid" with a "partial nonunion" but "no acute fracture or dislocation." ECF 72-1 at 10 & ECF 72-2 at 188. When McGuire met with Dr. Marthakis to discuss those results on November 13, 2018, she told him "nothing has changed" since his surgery. ECF 72-1 at 10. Despite McGuire's repeated complaints of pain and requests for additional help, Dr. Marthakis refused to order physical therapy, have his wrist reevaluated further, or provide any pain medication.

Approximately one year later, McGuire's wrist turned purple again and became cold to the touch. He saw Dr. Marthakis on December 3, 2019. He was in "so much pain that [he] was crying." *Id*. She noted the discoloration and prescribed naproxen, an anti-inflammatory pain medication. According to McGuire, Dr. Marthakis denied his requests for physical therapy and reevaluation due to cost concerns. Allegedly, she also told McGuire, "I won't see you for your left wrist anymore because you [have] a federal lawsuit" pending. *Id*. at 11.

In February of 2020, he stopped Dr. Marthakis on her way to work and told her that the naproxen was not helping. She repeated that she would not see him due to the

4

lawsuit. He subsequently put in multiple healthcare requests but has not been evaluated since December 3, 2019. On December 4, 2020, he saw Dr. Marthakis for a chronic care visit. When he tried to discuss his ongoing wrist issues, she told him to leave her office. McGuire alleges that he is still having pain and discoloration in his left wrist as of the date of this filing.

McGuire has sued both Dr. Thompson—who has since been substituted by the administrator of his estate—and Dr. Marthakis for monetary damages. He now wishes to add monetary damages claims against Corizon and Wexford as the medical providers contracted by the Indiana Department of Correction to provide care to inmates. Finally, he requests injunctive relief in the form of adequate medical care for his current wrist issues.

*Analysis of McGuire's Claims*

Under the Eighth Amendment, inmates are entitled to constitutionally adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To establish liability, a prisoner must satisfy both an objective and subjective component by showing: (1) his medical need was objectively serious; and (2) the defendant acted with deliberate indifference to that medical need. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A medical need is "serious" if it is one that a physician has diagnosed as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). On the subjective prong, the plaintiff must establish that the defendant "acted in an intentional or criminally reckless

5

manner, i.e., the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so." *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005) (internal quotation marks, brackets, and citations omitted).

Here, as to the claims involving Dr. Thompson, he was allegedly aware he needed to order another x-ray after the swelling in McGuire's wrist went down, but he nevertheless delayed getting that x-ray for nearly eight months. This delay in treatment harmed McGuire. Because the complaint alleges that Dr. Thompson knew McGuire needed medical attention, but unnecessarily delayed it, the complaint states a plausible claim against Julie Kolodziej as the administrator of Dr. Thompson's estate. *See Gutierrez v. Peters*, 111 F.3d 1364, 1369 (7th Cir. 1997); *Arnett v. Webster*, 658 F.3d 742, 752-53 (7th Cir. 2011); *Grieveson v. Anderson*, 538 F.3d 763, 779 (7th Cir. 2008).

As to Dr. Marthakis, she was allegedly aware McGuire was in severe pain due to his wrist yet delayed providing him pain medication for approximately one year. She also allegedly refuses to provide any additional treatment or therapy despite knowing that McGuire is still suffering from his injury. Although further fact-finding may reveal that Dr. Marthakis had a valid reason for her actions, based on these allegations, McGuire has stated a plausible claim against her. *See Arnett*, 658 F.3d at 753 (collecting cases and noting that a "delay in treating non-life-threatening but painful conditions may constitute deliberate indifference" and that a "refusal to provide an inmate with prescribed medication or to follow the advice of a specialist can also state an Eighth

6

Amendment claim if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain").

As to Corizon, the defendants argue that all of the claims against Corizon fall outside of the statute of limitations. *See* ECF 74 at 5–6. McGuire admits that Corizon has not been responsible for providing care within the prison since April 1, 2017, when Wexford took over the medical contract. *See* 72-1 at 17, 19. It is undisputed that Indiana's two-year limitations period applies to this case. *Behavioral Inst. of Ind., LLC v. Hobart City of Common Council*, 406 F.3d 926, 929 (7th Cir. 2005). The proposed amended complaint was not filed until January 12, 2021, almost four years after Corizon's responsibilities within the prison ceased. ECF 72-1. Therefore, amending the complaint to add Corizon as a defendant would be futile, and Corizon will be dismissed.

As to Wexford, the defendants argue that McGuire has not plead a valid constitutional claim against it. A private company performing a state function can be held liable to the same extent as a municipal entity under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978). *See Rice v. Corr. Med. Servs.*, 675 F.3d 650, 675 (7th Cir. 2012) (*Monell* framework applies to private company providing medical care at correctional facility). But a corporation "cannot be held liable under § 1983 on a *respondeat superior* theory." *Calhoun v. Ramsey*, 408 F.3d 375, 379 (7th Cir. 2005). Rather corporate liability exists only "when execution of a [corporation's] policy or custom . . . inflicts the injury." *Id.*

McGuire generally asserts that Wexford, who assumed the responsibility for prisoner medical care on April 1, 2017, has had continuing policies or procedures since

7

that time until the present date that "den[y], delay[], or provide[] low cost alternative treatments to serious medical conditions and/or they fail to provide access to appropriate diagnostic testing . . .." ECF 72-1 at 19. McGuire believes policies and procedures exist that "favor cutting costs over saving lives" and prevent prisoners from receiving adequate medical care. *Id*. He suggests there are alleged contractual financial incentives that "encourage Wexford to reduce referrals for outside testing and treatment" and "encourage conservative care to cut costs, which causes their employees to withhold necessary medical care from prisoners with serious medical conditions requiring diagnostic testing or outside care." *Id.* at 20. McGuire further asserts that Wexford's procedure for approving referrals is "extensive and requires several stages of approval before a prisoner can be approved for outside care" including a "collegial review, in which, after recommending an outside test or treatment, a prisoner's treating physician is required to discuss the inmate's condition and alternative, lower-cost treatment plans with the Regional Medical Director" who "frequently overrules treating physicians' recommendations for outside tests or treatments in favor of cheaper alternatives." *Id*. McGuire asserts that, because of these policies, he has suffered almost four years of "unnecessary and prolonged pain and suffering and an increased risk of permanent deformity." *Id*.

    The court agrees with the defendants that these alleged policies are not, on their face, unconstitutional. As noted by the Seventh Circuit, "administrative convenience and cost may be, in appropriate circumstances, *permissible factors* for correctional systems to consider in making treatment decisions." *Roe v. Elyea*, 631 F.3d 843, 863 (7th

Cir. 2011) (emphasis in original). The Constitution is only violated when those factors are considered "*to the exclusion of reasonable medical judgment* about inmate health." *Id*. (emphasis in original). McGuire's proposed amended complaint does not plausibly suggest that the list of unspecified policies mandated administrative convenience or cost savings over physician judgment in this case. Rather, he notes that the policies simply "favor" and "encourage" these things, which is not enough to state a plausible constitutional violation. *See Bissessur v. Indiana Univ. Bd. of Trs.*, 581 F.3d 599, 602 (7th Cir. 2009) (To survive dismissal, a complaint must state a claim for relief that is plausible on its face.).

Moreover, McGuire has pled facts that specifically undercut such an interpretation. *See Edwards v. Snyder*, 478 F.3d 827, 830 (7th Cir. 2007) (A plaintiff can plead himself out of court if he pleads facts that preclude relief.); *McCready v. Ebay, Inc.*, 453 F.3d 882, 888 (7th Cir. 2006) (same). Here, McGuire alleges that less than two months after Wexford assumed the responsibility for medical care within the prison[2] and approximately two weeks after his x-ray results showed his wrist was still fractured, McGuire was seen by an outside orthopedic surgeon at the direction of Dr. Thompson. A little over a month later, he visited the orthopedic surgeon again for cast removal and was informed that surgery would be necessary. A month after that, he was seen by an outside hand specialist who ordered a CT scan. Two weeks later, the CT scan was performed, and a little over a month after that he visited the outside hand specialist

---

[2] Wexford took over the IDOC contract on April 1, 2017.

for the second time. The surgery was performed by the hand specialist approximately two months later, and McGuire visited him for a follow-up two months after that. Based on these facts—which show that McGuire was seen consistently by outside specialists within two months of Wexford taking over for Corizon—it is not plausible to infer that Wexford's alleged cost-savings policies excluded all reasonable medical judgments regarding his medical treatment and prevented him from receiving outside care. *See e.g. Barrow v. Wexford Health Servs., Inc.*, 816 F. Appx. 1, 5 (7th Cir. 2020) (noting that Wexford's policies of "collegial review" and "cost minimization" were not facially unconstitutional and affirming dismissal of inmate's claim because he did not provide evidence he was injured by treatment decisions that were driven by cost-savings).

While McGuire alleges that the new doctor, Dr. Marthakis, later refused to have his wrist reevaluated, to prescribe him pain medication, or to prescribe him physical therapy,[3] he does not link her refusals to any specific policy. When read in conjunction with the facts outlined above, McGuire has not plausibly alleged that Dr. Marthakis's actions (or inaction) caused him harm as a result of Wexford's policies rather than her own personal decisions. *See Roe*, 631 F.3d at 863; *Taylor v. Wexford Health Sources, Inc.*, No. 15 C 5190, 2016 WL 3227310, *4 (N.D. Ill. June 13, 2016) (dismissing inmate's *Monell* claims because "[i]nstead of tying his injury to specific policies, [he] has chosen to provide a laundry list of ten alleged policies maintained by Wexford"); *Peacock v.*

---

[3] McGuire initially alleges she refused him this care because it "will cost us too much," but he later indicates that Dr. Marthakis informed him she would not see him for his wrist anymore because "you got a federal lawsuit in on your wrist." ECF 72-1 at 10–11. He also states that Dr. Marthakis told him she would order an x-ray "even tho I don't want to because it will cost us money." *Id*. at 10. The x-ray was performed within a few days of this conversation. *Id*.

*Rigsby*, No. 15 C 1884, 2016 WL 1383232, at *3 (N.D. Ill. Apr. 7, 2016) (inmate's allegation of "cost-cutting policy is too speculative and untethered to his injury to support his claim"); *see also Bissessur*, 581 F.3d at 602 ("A claim [only] has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (internal quotation marks and citation omitted)). Therefore, amending the complaint to add Wexford as a defendant would be futile, and Wexford will be dismissed.[4]

In addition to monetary damages, McGuire now seeks injunctive relief to ensure that the defendants "provide access to any and all necessary adequate medical treatment required to diagnose [his] serious medical condition." ECF 72-1 at 24. The defendants argue that McGuire has not provided any additional facts about the care he is currently receiving that would state a plausible claim for injunctive relief.[5] However, McGuire has added details about an encounter in February of 2020 in which he attempted to show Dr. Marthakis the purple color of his wrist but she dismissed him,

---

[4] Even if McGuire had stated a plausible claim against Wexford or Corizon, the court agrees with the defendants that he engaged in undue delay in bringing them. McGuire waited over two years since initiating this lawsuit to attempt to add any claims against Wexford or Corizon. He repeatedly sought to amend his complaint prior to the instant motion; however, this is the first time Wexford and Corizon are referenced. *See* ECF 34, ECF 49, ECF 60, ECF 63, ECF 72. McGuire has not suggested that he only recently became aware of facts that would support such claims, and he does not attempt to explain the delay in any way. *See Hukic v. Aurora Loan Servs.*, 588 F.3d 420, 432 (7th Cir. 2009) (courts are afforded broad discretion to deny leave to amend including situations where there is undue delay). Moreover, allowing McGuire to add these claims at this stage would be unduly prejudicial to the defendants. *Monell* claims are often complex in nature and can involve substantial additional discovery. *See Ferguson v. Roberts*, 11 F.3d 696, 706 (7th Cir. 1993) (upholding denial of leave to amend because the proposed complaint "contained 'new complex and serious charges' which would undoubtedly require additional discovery for the defendants to rebut").

[5] The court previously denied him leave to add a claim for injunctive relief because McGuire did not provide any details regarding the care (or lack thereof) he had received since a December 2019 visit with Dr. Marthakis. ECF 62 at 4–5.

11

visits with Dr. Marthakis on December 4th and 11th of 2020 during which Dr. Marthakis ignored his issues, and alleged multiple unanswered healthcare requests from December 3, 2019, to the present day. Furthermore, McGuire alleges that the medication prescribed by Dr. Marthakis is not helping and that he is still having pain, discoloration, and impaired movement in his left wrist.

While the court agrees that the facts in the proposed second amended complaint regarding McGuire's current medical care are sparse, giving him the benefit of the inferences to which he is entitled at this stage, he has stated a plausible claim for injunctive relief. It is the warden who is "a proper defendant [for] injunctive relief [and is] responsible for ensuring that any injunctive relief is carried out." *Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011). Thus, McGuire may proceed against the Warden of the Indiana State Prison in his official capacity to receive a permanent injunction to ensure he obtains constitutionally adequate medical care for his left wrist. That said, the specific requests McGuire describes throughout his complaint—including receiving care from an outside specialist, participating in physical therapy, and mandating that the recommendations of a previous doctor are followed—may not be ordered even if it is ultimately determined that his current medical care is inadequate. While it is true that the Warden has both the authority and the responsibility to ensure McGuire receives the medical care to which he is entitled under the Eighth Amendment, *Gonzalez*, 663 F.3d at 315, there may be various ways to do so that do not involve sending McGuire to a specialist, a surgeon, or a physical therapist. Simply put, McGuire cannot dictate how such medical care is provided. *See Westefer v. Neal*, 682 F.3d

12

679, 683 (7th Cir. 2012) (The Prison Litigation Reform Act mandates that "remedial injunctive relief must be narrowly drawn, extend no further than necessary to correct the violation of the Federal right, and use the least intrusive means necessary to correct the violation of the Federal right.") (internal quotation marks, brackets, and citations omitted)); *see also Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997) (Inmates are "not entitled to demand specific care [nor] entitled to the best care possible."). Therefore, injunctive relief—if granted—would be limited to requiring correctional officials to provide medical treatment for McGuire's left wrist to the extent required by the Constitution.

### *Preliminary Injunction*

With regard to the separately filed motion for preliminary injunctive relief (ECF 73), "a preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

As to the first prong, "the applicant need not show that it definitely will win the case." *Illinois Republican Party v. Pritzker*, 973 F.3d 760, 763 (7th Cir. 2020). However, "a mere possibility of success is not enough." *Id.* at 762. "A strong showing . . . normally

includes a demonstration of how the applicant proposes to prove the key elements of its case." *Id.* at 763 (quotation marks omitted).

As to the second prong, "[i]ssuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with . . . injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22. "Mandatory preliminary injunctions—those requiring an affirmative act by the defendant—are ordinarily cautiously viewed and sparingly issued [because] review of a preliminary injunction is even more searching when the injunction is mandatory rather than prohibitory in nature." *Mays v. Dart*, 974 F.3d 810, 818 (7th Cir. 2020) (quotation marks omitted).

Additionally,

> [t]he PLRA circumscribes the scope of the court's authority to enter an injunction in the corrections context. Where prison conditions are found to violate federal rights, remedial injunctive relief must be narrowly drawn, extend no further than necessary to correct the violation of the Federal right, and use the least intrusive means necessary to correct the violation of the Federal right. This section of the PLRA enforces a point repeatedly made by the Supreme Court in cases challenging prison conditions: Prison officials have broad administrative and discretionary authority over the institutions they manage.

*Westefer*, 682 F.3d at 683 (quotation marks, brackets, and citations omitted).

Here, McGuire has not adequately demonstrated how he intends to prove the key elements of his case with regard to the injunctive relief sought. The sparse details set forth above regarding his current medical care are enough to state a plausible claim for relief under the more lenient standards of Federal Rule of Civil Procedure Rule 8, but his motion does not meet the higher threshold required to obtain a preliminary injunction.

*See Pritzker*, 973 F.3d at 763 (7th Cir. 2020). The majority of his motion describes past events and past medical care—the portion that does refer to his current care is speculative and lacking in detail. For example, McGuire asserts that there is an "increasing risk that he may not be able to use his left wrist again," but he does not provide evidence to support this assertion. ECF 73 at 4. He also laments the lack of physical therapy at the Indiana State Prison and speculates that if such services are not offered "the Doctor can submit it down state for referral to an outside hospital," but he does not explain how the alleged lack of physical therapy is currently harming him, considering the significant amount of time that has elapsed between the injury/prior surgery and the present day. *Id*. at 3. *See e.g. Winter*, 555 U.S. at 22 (courts may not issue a preliminary injunction based "only on a possibility of irreparable harm"). Therefore, the motion will be denied.

### *Motion for Extension of Time*

Finally, McGuire filed a motion seeking additional time to reply to the defendants' response to his motion to amend and motion for preliminary injunction. ECF 75. His reply was due on February 1, 2021, *see* N.D. Ind. L.R. 7-1(d)(3), but McGuire did not date his motion until February 4, 2021, making the motion several days too late. *Id*. at 2.[6] McGuire has not shown good cause to extend the deadline after the fact. He alleges that he has no access to the prison law library to investigate his case due to Covid-19 restrictions, but this does not explain the late extension request. Moreover, although McGuire states that

---

[6] The motion was scanned and emailed from the Indiana State Prison on February 5, 2021. ECF 75 at 1.

he wants an extension in order to obtain court-appointed counsel to assist him with the case because "it's very complicated and I personally don't know how to respond to their response,"[7] the court has since denied that request because he did not make a reasonable attempt to obtain counsel on his own. *See* ECF 77.[8] This case has been pending for almost two and a half years. In light of this and the fact that McGuire only recently attempted to add the additional claims and defendants to this lawsuit, the court finds it is in the interests of justice to deny the request for extension of time—which is related to the request for counsel—and to proceed without further delay.[9]

For these reasons, the court:

(1) DENIES AS MOOT the motion to amend (ECF 63);

(2) GRANTS IN PART AND DENIES IN PART the motion to amend (ECF 72) as described in this order;

(3) DIRECTS the clerk to separately docket the second amended complaint

---

[7] McGuire also asserts that, without an attorney, he will be "unable to properly investigate all facts necessary for successful litigation of my case because it will require documents that I won't be allowed to access along with other extensive work." ECF 75 at 1. He points to a letter he sent to the clerk asking the court to order the defendants to turn over discovery materials—namely "all informal and formal grievances starting from October 1, 2016" and "any and all medical records . . . from October 1, 2016 to current"—as proof that he cannot obtain the information. ECF 70. However, there is no indication that formal discovery has been initiated by McGuire or that court intervention would be appropriate at this time. *See generally* N.D. Ind. L.R. 26-1 & 26-2; *see also* N.D. Ind. L.R. 37-1.

[8] In that order the court explained, in detail, the steps McGuire needs to take to try to obtain a lawyer if he still wishes to do so. ECF 77 at 3. The court hereby ADVISES McGuire that he should also include a copy of this order with any communications he sends to potential attorneys.

[9] McGuire filed a "response" to the court's order denying him counsel (ECF 78), but nothing in that response provides a basis for revisiting that decision. McGuire does not assert that he has made any other effort to obtain counsel on his own, nor does he dispute the court's characterization of his original efforts. Moreover, although he asks the court to delay ruling on the motion to amend and the motion for preliminary injunction until he obtains counsel, as described above, he has not provided a sufficient reason to do so.

16

(ECF 72-1) along with its exhibits (ECF 72-2);

(4) GRANTS Dustin E. McGuire leave to proceed against Julie Kolodziej, as administrator of the estate of Dr. Joseph M. Thompson, for Dr. Thompson's delay in providing him with adequate medical treatment for his wrist after he fell on October 1, 2016, in violation of the Eighth Amendment;

(5) GRANTS Dustin E. McGuire leave to proceed against Dr. Nancy Marthakis for failing to provide him with pain medication and/or adequate medical treatment for his wrist beginning in late September of 2018, in violation of the Eighth Amendment;

(6) DIRECTS the clerk to add the Warden of the Indiana State Prison in his official capacity as a defendant;

(7) GRANTS Dustin E. McGuire leave to proceed against the Warden of the Indiana State Prison in his official capacity for injunctive relief to ensure he is provided with constitutionally adequate medical care for his left wrist as required by the Eighth Amendment;

(8) DISMISSES Corizon and Wexford;

(9) DISMISSES all other claims;

(10) DIRECTS the clerk to request Waiver of Service from (and, if necessary, the United States Marshals Service to serve process on) the Warden of the Indiana State Prison at the Indiana Department of Correction with a copy of this order and the second amended complaint, pursuant to 28 U.S.C. § 1915(d);

(11) ORDERS, pursuant to 42 U.S.C. § 1997e(g)(2), Julie Kolodziej, as administrator of the estate of Dr. Joseph M. Thompson, Dr. Nancy Marthakis, and the

Warden of the Indiana State Prison to respond to the second amended complaint, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which Dustin E. McGuire has been granted leave to proceed in this screening order;

    (12) DENIES the motion for a preliminary injunction (ECF 73); and

    (13) DENIES the motion for extension of time (ECF 75).

    SO ORDERED on February 17, 2021

/s/JON E. DEGUILIO  
CHIEF JUDGE  
UNITED STATES DISTRICT COURT